**FISCHLER et al. v. McCARTHY.**

United States District Court
S. D. New York.

Jan. 6, 1954.

Harry Green and Samuel A. Bloom, New York City, for plaintiffs.

J. Edward Lumbard, U. S. Atty., New York City, for defendant. Alfred P. O'Hara, Thomas A. Bolan, Asst. U. S. Attys., New York City, of counsel.

IRVING R. KAUFMAN, District Judge.

On December 8, 1953, plaintiffs filed a complaint in an action seeking to enjoin

Joseph R. McCarthy, individually [1] and as Chairman of the Permanent Subcommittee of Investigations of the Senate Committee on Government Operations, from forcing plaintiffs to produce documents in their possession with respect to loyalty board proceedings at Fort Monmouth, New Jersey. This complaint sought also a declaratory judgment declaring "the rights, powers and duties of the plaintiffs herein, and with respect to the defendant herein, and with respect to plaintiffs' obligations to the Department of the Army" and further sought to quash or modify the demand and subpoena previously served upon plaintiffs.

Plaintiffs now move for an injunction *pendente lite* and are met with a cross-motion to dismiss the action on the grounds: (1) of improper venue in that (a) the jurisdiction of this Court is invoked on the ground that the action arises under the Constitution and laws of the United States, and (b) the defendant, as an individual, is a resident of the State of Wisconsin and as Chairman of the Permanent Subcommittee on Investigations of the Senate Committee on Government Operations, has his official residence at Washington, District of Columbia; (2) that the Court lacks jurisdiction of the subject matter in that the amount actually in controversy is less than $3,000 exclusive of interest and costs; (3) that the complaint fails to state a claim upon which relief can be granted, in that the issuance by de-

fendant of the subpoenas involved in this action constitutes the exercise of a valid legislative power with which a court may not interfere.

From the affidavits of the plaintiffs, it appears that Albert Fischler was until 1952 an employee of the Department of the Army and that William Saltzman is presently employed by the Department of the Army. Both plaintiffs were subpoenaed to appear before the Subcommittee as witnesses at an inquiry into conditions in the Signal Corps of the United States Army at Fort Monmouth, New Jersey. Plaintiffs testified at the hearings and were advised to consider themselves under continuing subpoenas. Both witnesses testified that they had been the subject of Loyalty Board hearings and had been suspended from their employment as security risks. After hearings before Loyalty-Security-Hearing Boards, they had been reinstated.

At the Subcommittee hearings, the plaintiffs were ordered to produce such documents as they might have in their possession relating to the Loyalty- Security Board Hearings. They refused to do so and were thereupon directed to comply by December 7, 1953. Plaintiffs, through counsel, objected to producing the documents requested and also advised the Department of the Army of the situation. On December 7, 1953, counsel for plaintiffs received the response from John G. Adams, Department Counselor, Department of the Army, set forth below.[2] No further action has

---

1. The action against Senator McCarthy as an individual was dismissed at plaintiffs' request pursuant to Rule 41 of the Federal Rules of Civil Procedure, 28 U. S.C.

2. "This is in response to your letter of 2 December 1953 and your telegram of 4 December 1953 both addressed to the Secretary of the Army, and concerned with Messrs. Albert Fischler and William Saltzman.

    "Insofar as both individuals are concerned, such unclassified papers relating to their loyalty or security status as may be in their possession concerning their own personal situations are their own copies and the decisions as to what

should be done with them remain with the individuals themselves. The Army itself has not made available any facts with reference to the case of Mr. Fischler or Mr. Saltzman to Congressional Committees nor will it do so. However, the Department recognizes the right of an individual to make the facts of his case known if he wishes to do so and if either Mr. Fischler or Mr. Saltzman desires to present to a Congressional Committee unclassified communications with respect to his own security adjudication, the Army will interpose no objection.

"Insofar as your reference to Confidential or other classified documents is

been taken by the Subcommittee since the filing of the complaint by Fischler and Saltzman on December 8, 1953.

## I. Venue

■ In paragraph "1" of the complaint, plaintiffs allege that "The court has jurisdiction under 28 U.S.C. § 1331" and no other basis of jurisdiction is urged. Accordingly the general venue provisions contained in 28 U.S.C. § 1391 (b) apply and it follows that the action must be brought in the district where the defendant resides. Since this action is now one solely against a federal official, acting in his official capacity on a national level, the proper venue lies in the district of official residence of the Senator, i. e. the District of Columbia.

■ Plaintiffs, however, urge that all the actions complained of have taken place within the Southern District of New York. The defendant was served in the Southern District of New York. It is plaintiffs' contention that the defendant by issuing the subpoena within this district, returnable here, by conducting the hearings here, and by physically being present and acting officially here, has, in effect, extended his official residence into this district. For such a proposition, plaintiffs rely upon Robertson v. Railroad Labor Board, 1925, 268 U.S. 619, 45 S.Ct. 621, 622, 69 L.Ed. 1119, but in that case, the Court was dealing with a specific statute which read in part: " 'In case of failure to comply with any subpoena [to testify] or in case of the contumacy of any witness appearing before the Labor Board, the Board may invoke the aid of any United States District Court' ". Transportation Act, 1920, February 28, 1920

C. 91, § 310, par. b, 41 Stat. 456, 472. There a witness, a citizen and an inhabitant of Ohio was served in that State with a subpoena to appear before the Board in Illinois. The witness declined to appear and suit was begun by the Board in Illinois pursuant to the above statute to compel his appearance. Summons to appear for this suit was likewise served on the defendant in Ohio. The defendant appeared specially and moved to quash the service on the ground that, being an inhabitant of Ohio and served there, he was not subject to the jurisdiction of the federal court for Illinois. The Court, observing that the question presented was solely one of statutory interpretation, 268 U.S. at page 622, 45 S.Ct. at page 622, held that by the phrase " 'any United States District Court' " Congress made venue proper in any such court of competent jurisdiction, but that there was no Congressional intent to depart from the general rule that the jurisdiction of a district court in personam is limited to the district of which the defendant is an inhabitant or in which he can be found. It therefore reversed the Court below which had overruled the motion to dismiss for lack of jurisdiction. It is difficult to see how this precedent is of aid to the plaintiffs in the instant case. In effect all that Robertson v. Railroad Labor Board, supra, holds is that under the special provisions of the statute there construed, venue is proper in any District Court of competent jurisdiction but the territorial limitations on the jurisdiction of a District Court were not altered by the statute.

The defendant has acted or purported to act in an official capacity within this

---

concerned, it is not understood how any such documents can be in the possession of either Mr. Fischler or Mr. Saltzman. The reference in the quoted language from Mr. Fischler's Form 50 relates to a Confidential document in official Army files and presumably no such document is in Mr. Fischler's possession.

"It should be emphasized, however, that as a former employee of the Army Mr. Fischler is governed by applicable statutes relating to the disclosure of

classified military information. As a present employee, Mr. Saltzman is governed by applicable statutes and regulations concerning the release of classified military information.

"In the event that either Mr. Fischler or Mr. Saltzman does have in his possession any classified documents, it is requested that you notify this office immediately specifically identifying the documents."

district and the matter in dispute springs from such acts. But the plaintiffs, proceeding against the defendant solely in his official capacity, must nevertheless bring their suit in the district of official residence, the District of Columbia. See Butterworth v. Hill, 1885, 114 U.S. 128, 5 S.Ct. 796, 29 L.Ed. 119; Juell v. Commissioner of Immigration, etc., D.C. E.D.N.Y., 1941, 37 F.Supp. 533; Smart v. Woods, 6 Cir., 184 F.2d 714, certiorari denied 1951, 340 U.S. 936, 71 S.Ct. 496, 95 L.Ed. 675; Cf. Blackmar v. Guerre, 1951, 342 U.S. 512, 72 S.Ct. 410, 96 L. Ed. 534. Whatever inconveniences such a result may entail are outweighed by the advantages of orderliness springing from fixing one official residence for all federal officials acting on a national level. It is to be noted that a Congressional Committee might act through many members, each being present in an official capacity in a different district. The view urged by the plaintiffs would expose the Committee to suit in each of the several districts. Thus the work of the government might be seriously impaired. The one purpose of having a capitol is to have a site for the centralized disposition of such matters of national concern.

■ The situation is of course different where the Government is proceeding against an individual. Then the individual is the defendant, his place of residence or presence, or in some instances the district where an offense is alleged to have been committed, will determine the proper venue of the action. But if one chooses to proceed against a federal official, it is not too much to ask that he do so at the place of official residence, in this case the District of Columbia.

## II. Jurisdictional Amount

■■ As noted above, plaintiffs allege that jurisdiction of the court exists under 28 U.S.C. § 1331. They also allege that the "amount in controversy exceeds exclusive of interest and costs,

the sum of $3,000." But only this bare allegation is offered. We are not here confronted with a matter in which jurisdiction is predicated on 28 U.S.C. § 1343(3), which enables one deprived of civil rights by a *State* to proceed in a federal forum without regard to the monetary requirement. Cf. Hague v. C. I. O., 1939, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423. Nor does the Declaratory Judgment Act alter the jurisdictional amount required; the concern of that Act is solely with the stage the controversy must reach before it may be subject to a court adjudication. Hock v. 250 Northern Ave. Corp., 2 Cir., 1944, 142 F.2d 435; Putnam v. Ickes, 1935, 64 App.D.C. 339, 78 F.2d 223. With respect to the plaintiff Saltzman, still an employee of the Department of the Army, there is no allegation as to his present compensation.[3] As to the plaintiff Fischler, now in private employment, it is even more difficult to discern a basis for the allegation that the amount in controversy exceeds $3,000. See Reeber v. Rossell, D.C.S.D.N.Y.1950, 91 F.Supp. 108.

## III. The Nature of the Relief Sought

Apart from the defects of venue and jurisdiction, above noted, which of course in themselves compel dismissal of the complaint, it is clear that the "type of question" presented and the nature of the relief sought is in its present state beyond the purview of the Judicial Branch of our Government.

This was the view of the Court of Appeals of the District of Columbia, Mins v. McCarthy, 209 F.2d 307, which, when faced with an almost identical question, stated (Defendant's Brief, p. 10):

"The Court is of the opinion that where a committee of the Congress has issued a subpoena ad testicandum to a witness to appear at a hearing, without defining the questions to be asked, the judicial branch of the Government should not enjoin

3. It appears from Exhibit C, a letter from plaintiff's attorney to the Secretary of the Army, that he is a GS–7.

in advance the holding of the hearing or suspend the subpoena. The rights of witnesses in respect of any question actually asked at the hearing are subject to determination in appropriate proceedings thereafter."

In Hutner v. McCarthy, Civil 89–364, the Hon. John W. Clancy of this Court denied a motion for a preliminary injunction and granted a motion to dismiss a complaint which sought to restrain this same Subcommittee from recalling a witness at a public hearing. (Decided December 8, 1953, without opinion.)

■ It is a fallacy to assume that courts exist for the adjudication of all disputes at all levels of their development. Such an assumption is based upon a misconception of the function of our three distinct branches of government.

> "The judge, even when he is free, is still not wholly free. He is not to innovate at pleasure. He is not a knight-errant, roaming at will in pursuit of his own ideal of beauty or of goodness. He is to draw his inspiration from consecrated principles. He is not to yield to spasmodic sentiment, to vague and unregulated benevolence. He is to exercise a discretion informed by tradition, methodized by analogy, disciplined by system, and subordinated to 'the primordial necessity of order in the social life.' " Cardozo, The Nature of the Judicial Process, p. 141.

Oddly enough the principle which inhibits this Court from adjudicating this type of question is one invoked by the plaintiffs themselves. They urge that 'The acts of the defendant complained of constitute an invasion of the powers and authority of the executive and judicial branches of the United States Government, in contravention of the constitutional scheme and limitation of a separation of powers provided for by the Constitution of the United States." Plaintiffs' Brief, p. 6. They contend that the matter of their suspension and re-employment by the Department of the Army is a matter within the realm of the Executive Branch of the Government which defendant could not regulate or modify. From this premise they go on to urge that the matter is therefore one into which defendant may not inquire, although this does not of course necessarily follow.

■ It is entirely clear, however, that neither this nor any other court may prescribe the subjects of Congressional investigation. Were a court empowered to limit in advance the subject matter of Congressional investigations, violence would be done to the principle of separation of powers upon which our entire political system is based. Justice Brandeis warned of the danger of encroachment by one department of the government upon another, when he spoke of the dangers of

> "[U]surpation, proceeding by gradual encroachment rather than by violent acts; subtle and often long-concealed concentration of distinct functions, which are beneficent when separately administered, and dangerous only when combined in the same persons. It was by processes such as these that Caesar Augustus became master of Rome. The makers of our own Constitution had in mind like dangers to our political liberty when they provided so carefully for the separation of governmental powers." The Words of Justice Brandeis, by S. Goldman, p. 163 (1953).

We have faced recurring problems arising from a disregard of the principle of separation of powers in our government. See Willis, Constitutional Law (1936) at p. 152 et seq. The Judiciary itself has often been at fault in overstepping its own bounds and entering the province of the Legislative Branch. Such an invasion is inherent in "judicial legislation". The Executive has often acted under Congressional authority in a quasi-legislative manner. Hampton Jr. & Co. v. United States, 1928, 276 U.S. 394, 48 S.Ct. 348, 72 L.

Ed. 624. But the fundamental principle has been that of a separation of governmental powers.[4]

■ "Legislative power * * * is the authority to make laws". Springer v. Government of Philippine Islands, 1928, 277 U.S. 189, 202, 48 S.Ct. 480, 482, 72 L.Ed. 845. In its exercise of that function, Congress may inform itself by investigations and in such an exercise of its legislative authority it cannot be harassed by premature interference.

The contention that defendant is acting *ultra vires* because he is usurping executive power is one which involves the nature, purpose and methods of an arm of the legislature. If a prior restraint is to be imposed upon the defendant it must come from the Congress, not from the courts.[5] Each branch of government must guard against encroachments by the other branches, lest, in the end, the principle of separation of powers become a meaningless confusion.

■ Of course the courts may require the performance of a purely ministerial act by a member of another branch of the Government. Noble v. Union River Logging R. Co., 1892, 147 U.S. 165, 13 S.Ct. 271, 37 L.Ed. 123. And if the plaintiffs in fact refuse to comply with the subpoena (which is not the case presented here) and are cited for contempt, or comply and are faced with prosecution for violating military regulations, a justiciable controversy would then exist for determination. But, as I have indicated, it is quite clear that the question presented here has not "ripened" for litigation, and restraints upon the defendant, if any, are at this time within the province of the Congress which established the Subcommittee.

Plaintiffs complain that the situation places them in a dilemma which they would analogize inter alia to "cruel and unusual punishment." They must, they claim, violate the directives of either the Army or the Senate Committee. But the reply of the Department counsellor suggests that this dilemma may be less real than imaginary for it discloses that such records as plaintiffs have are their own property and the decision as to their disposition rests with them, and that plaintiffs have no right to have "classified" documents in their possession. This letter further requests that the plaintiffs immediately notify the Department Counsellor of any classified documents in their possession and the plaintiffs are silent as to any response made by them to this request. But even were plaintiffs faced with a very real dilemma of this kind, this Court would be powerless to act at this stage of the proceedings.

■ The Declaratory Judgment Act has altered somewhat the methods by which the common law operated so that it is no longer always true that the law is to be enforced as Jeremy Bentham said, like the discipline of a puppy-dog— "you wait for it to do something wrong and then you spank it." But the very first clause of the Declaratory Judgment Act limits its application to "case[s] of actual controvers[ies] within its [the Court's] jurisdiction", 28 U.S.C. § 2201, and this controversy is beyond the jurisdiction of this Court because it seeks to enjoin the operation of a committee of another branch of the government. There is no taking of property or infliction of punishment now before this Court. There is at best an allegation that the ramifications of the legisla-

**4.** "The accumulation of all powers, legislative, executive, and judiciary, in the same hands, whether of one, a few, or many, and whether hereditary, self-appointed, or elective, may justly be pronounced the very definition of tyranny." The Federalist, No. 47, quoted in Willis, Constitutional Law, supra, at p. 168.

**5.** Sen. McCarran, in a statement carried

in the New York Times, Jan. 2, 1954, indicated that the Senate will probably consider the advisability of one Committee of the Senate (Internal Security Subcommittee) investigating Communism in government instead of both Sen. Jenner's and Sen. McCarthy's Subcommittees. See also New York Times, Jan. 5, 1954.

tive act, once completed, may injure the plaintiffs. It would, as we have observed, be entirely proper for a Court to consider the validity of the legislative act when and if its effect was in fact to injure the plaintiffs, as, for example, by prosecution for contempt. But the legislature cannot be compelled to submit to the prior approval and censorship of the judiciary before it may ask questions or inspect documents through its investigating subcommittees, or even before it enacts legislation, New Orleans Water-Works Co. v. City of New Orleans, 1896, 164 U.S. 471, 17 S.Ct. 161, 41 L.Ed. 518; Hearst v. Black, 1936, 66 App.D.C. 313, 87 F.2d 68; Alpers v. City and County of San Francisco, C.C.N.D.Cal.1887, 32 F. 503 any more than the judiciary can be compelled by the legislature to submit its rulings or decisions for legislative approval.

It appears therefore that this Court lacks venue, jurisdiction and power to grant the relief sought. It would be difficult to hypothesize a case more completely beyond the orbit of this Court.

The motion for an injunction *pendente lite* is denied. The cross-motion to dismiss is granted.

Settle order.