792

**In re MOTION TO QUASH SUBPOENAS
AND VACATE SERVICE.**
Misc. No. 2032.

United States District Court
W. D. Pennsylvania.
Nov. 21, 1956.

Hymen Schlesinger, Pittsburgh, Pa., for petitioners.

McILVAINE, District Judge.

On October 24, 1956, Representative Francis E. Walter, Chairman of the Committee on Un-American Activities of the House of Representatives, directed the United States Marshal Albert Di-Meolo at Pittsburgh, Pennsylvania, to serve a subpoena, duces tecum, upon Bessie Steinberg to appear as Executive Secretary of the Western Pennsylvania Committee for Protection of Foreign Born before a Sub-Committee of the Committee on Un-American Activities to be held on November 28, 1956, at 10:00 a. m., at the United States Courthouse, Post Office Building, Youngstown, Ohio, which subpoena included the following duces tecum clause:

"You are hereby commanded, as Executive Secretary of the Western Pennsylvania Committee for Protection of Foreign Born, to bring

with you and produce before said committee or a duly authorized subcommittee thereof, the following:

"(1) All letters and copies of letters and all leaflets and documents of every nature whatsoever, incoming and outgoing, passing between the Western Pennsylvania Committee for Protection of Foreign Born, its officers and agents, and the American Committee for Protection of Foreign Born, its officers and agents, during the period January 1, 1953, to October 20, 1956, designed to revise, repeal and influence the revision or repeal of the (a) Smith Act; (b) Internal Security Act; and (c) Immigration and Nationality Act.

"(2) Excerpts from the Minutes of all meetings of the Western Pennsylvania Committee for Protection of Foreign Born during the period January 1, 1953, to October 20, 1956, showing all action taken and all consideration given to proposals to revise, repeal and influence the revision or repeal of the (a) Smith Act [18 U.S.C.A. § 2385]; (b) Internal Security Act [64 Stat. 987]; and (c) Immigration and Nationality Act [8 U.S.C.A. § 1101 et seq.]."

A subpoena from the Committee was also served upon Allan D. McNeil as Secretary of the Committee to End Sedition Laws, which subpoena carried the following duces tecum clause:

"You are hereby commanded, as Secretary of the Committee to End Sedition Laws, to bring with you and produce before said committee or a duly authorized subcommittee thereof, the following:

"Excerpts from all minutes of the Committee to End Sedition Laws during the period January 1, 1954, to October 20, 1956, showing all action taken and all considerations given to proposals to repeal the sedition statutes of the various States within the United States."

These subpoenas were served upon Miss Steinberg and Mr. McNeil in Pitts-burgh, Pennsylvania, where they both are residents, on November 9, 1956.

On November 20, 1956, a motion was filed on behalf of Allan D. McNeil and Bessie Steinberg to quash the subpoenas and vacate service. The Committee on Un-American Activities of the House of Representatives of the United States was not served with a copy of the motion, nor was there any attempt made to serve same on them.

Because of the urgency of this matter and this being an attempt to restrain a legislative function of the Congress of the United States, this Court held a hearing on the motion on November 21, 1956. The petitioners were represented by counsel before the Court; however, the Committee was not represented.

The motion of the petitioners to quash subpoenas and vacate service alleges that the Committee's subpoena is in violation of the First Amendment of the United States Constitution which provides that: "* * * Congress shall make no law * * * abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances," and claim jurisdiction of this Court under authority of United States v. Rumely, 345 U.S. 41, 73 S.Ct. 543, 97 L.Ed. 770.

Under Public Law 601 of the 79th Congress, the Committee on Un-American Activities was created under Section 121 of Part II, relating to standing committees. The duties of the said committee are stated in said Act to be the following:

"The Committee on Un-American Activities, as a whole or by subcommittee, is authorized to make from time to time investigations of [1] the extent, character, and objects of un-American propaganda activities in the United States, [2] the diffusion within the United States of subversive and un-American propaganda that is instigated from foreign countries or of a domestic origin and attacks the principle of the form of government as guaranteed

by our Constitution, and [3] all other questions in relation thereto that would aid Congress in any necessary remedial legislation. * * *" 60 Stat. 828.

 Before this Court could quash a subpoena or make any order or decree, it must have jurisdiction of the persons or parties whom it would seek to affect or enjoin. Its apparent that the petitioners are seeking to quash a subpoena issued by the authority of a Congressional Committee. The petitioners are in effect asking this Court to enjoin the Committee from requiring the production of the documents called for in their subpoena. However, the Committee was not served with a copy of the motion, nor were they present, or represented in Court.

The matter could and perhaps should be disposed of on this question. "Judge Learned Hand clearly set forth the limitations on the power of a Court in Alemite Manufacturing Corporation v. Staff, 2 Cir., 1939, 42 F.2d 832, when he stated that:

"'* * * no court can make a decree which will bind any one but a party; a court of equity is as much so limited as a court of law; it cannot lawfully enjoin the world at large, no matter how broadly it words its decree. If it assumes to do so, the decree is pro tanto brutum fulmen, and the persons enjoined are free to ignore it. It is not vested with sovereign powers to declare conduct unlawful; *its jurisdiction is limited to those over whom it gets personal service, and who therefore can have their day in court.* * * *'" [Emphasis added.] McCracken v. Pennsylvania R. R., D.C.W.D.Pa.1955, 135 F.Supp. 660, 661.

Petitioners' counsel have cited no case in which a Congressional subpoena has been quashed and service vacated, nor have we found any.

 However, even if this Court had jurisdiction, we cannot grant this relief. There is no question that the subject matter [that is subversive activities] under investigation is a subject on which Congress can legislate. There can be no question of the power of Congress to undertake fact-finding inquiries in aid of legislation. As has been said this necessitates some curtailment of the individual's right to be let alone. And subpoenas issued by a committee of the [House] to bring before it a witness to testify in an investigation authorized by the [House], are as if issued by the [House] itself. McGrain v. Daugherty, 1927, 273 U.S. 135, 47 S.Ct. 319, 71 L.Ed. 580.

There is no need of re-emphasizing the powers of the Congress to investigate. And indeed the right of this Committee to investigate in the very manner it is here proceeding has received the sanction of the Courts. United States v. Josephson, 2 Cir., 1947, 165 F.2d 82, certiorari denied, 333 U.S. 838, 68 S.Ct. 609, 92 L.Ed. 1122, rehearing denied, 333 U.S. 858, rehearing denied 335 U.S. 899, 69 S.Ct. 294, 93 L.Ed. 434. The courts have no authority to speak or act upon the conduct of the legislative branch of its own business, so long as the bounds of power and pertinency are not abused. Our own Circuit, in United States v. Orman, 3 Cir., 1953, 207 F.2d 148, 153, states:

"'Pertinent,' as used to describe a requisite for valid congressional inquiry, means 'pertinent to a subject matter properly under inquiry, not generally pertinent to the person under interrogation.' * * * United States v. Rumely, 345 U.S. 41, 73 S.Ct. 543, 97 L.Ed. 770.''

The petitioners urge that the subpoena issued by the Committee is beyond the authority of the Committee. However,

"* * * The remedy for unseemly conduct, if any, by Committees of Congress is for Congress, or for the people; it is political and not judicial. 'It must be remembered that legislatures are ultimate guardians of the liberties and wel-

fare of the people in quite as great a degree as the courts.' The courts have no authority to speak or act upon the conduct by the legislative branch of its own business, so long as the bounds of power and pertinency are not exceeded, and the mere possibility that the power of inquiry may be abused 'affords no ground for denying the power.'" Barsky v. United States, 1947, 83 U.S.App.D.C. 127, 167 F.2d 241, 250.

The Rumely case, supra, on which petitioners so strongly rely does not apply to this case at the present time. Indeed the rationale of that case in the light of the previous decisions shows that Congress does have authority over the subject matter of this investigation. It is true that the case holds that having this authority does not impart authority over all activities of persons concerned in the subject matter. But no precise question of the boundaries allowed could in any event be before us now.

We would be naive indeed if we did not recognize the difference of opinion regarding the subversive investigations of the last few years. That Congress has the duty to consider remedial legislation in order to best effectuate our defenses against subversion is only to state the obvious. That Congress and the courts should be ever vigilant to protect our individual rights is no less clear. Emotional reactions should not and must not permit either to lose sight of the citizen's constitutional privileges. But neither should these same emotions make us hesitate to do our duty. The Committee to End Sedition Laws and the Committee for Protection of Foreign Born are entitled to no less protection than the Grange, the A. F. of L.-C. I. O., the National Association of Manufacturers, the American Legion, or the Daughters of the American Revolution. Nor are they entitled to any more. Here the petitioners are asking for protection against some danger as yet unknown. They claim a constitutional impairment not now clear. They presume a limitation of their constitutional privileges not yet threatened. For us to presume that the House of Representatives, the body most susceptible to the will of the people, will be less sensitive to the constitutional rights of the citizen than will be this Court would authorize a presumption I am not prepared to accept. This would not be exercising a judicial prerogative or a judicial restraint, but would in truth be judicial arrogance.

Here we have a validly constituted committee of the Congress with jurisdiction over the matter under consideration who have properly subpoenaed pertinent records for which they may have good reason to examine. There is no reason for action by this Court.