Lewis **COLE, Eleanor Raskin, Thomas D. Hurwitz, Robert H. Roth, Columbia Chapter of Students for a Democratic Society, suing on their own behalf and on behalf of all other individuals and/or organizations similarly situated,** Plaintiffs,

v.

The **TRUSTEES OF COLUMBIA UNIVERSITY IN the CITY OF NEW YORK,** Defendants.

**No. 69 Civ. 2355.**

United States District Court
S. D. New York.

June 4, 1969.

Kunstler & Kunstler, Lubell & Lubell, New York City, Nancy Stearns, Newark, N. J.; William M. Kunstler, Arthur Kinoy, David G. Lubell, Jeremiah S. Gutman, New York City, of counsel.

Thacher, Proffitt, Prizer, Crawley & Wood, New York City, for defendants; John W. Wheeler, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty., for Southern District of New York, New York City, for the Government; Michael D. Hess, Asst. U. S. Atty., New York City, of counsel; David Katsky, Asst. U. S. Atty., New York City, on brief.

## OPINION

TENNEY, District Judge.

This is a motion brought on by the plaintiffs, Columbia University Chapter of Students for a Democratic Society, and certain of its members, suing on behalf of other individuals and/or organizations similarly situated, for an order, pursuant to Rule 65(a), (b) of the Federal Rules of Civil Procedure, restraining the defendants, The Trustees of Columbia University (hereinafter referred to as "the Trustees"), from disclosing, revealing or delivering any books, records, reports, correspondence, membership lists, associational information or other documents specified in a subpoena duces tecum served upon the Trustees by the Permanent Subcommittee on Investigations of The Committee on Government Operations of the United States Senate. The Trustees, rather than risk contempt of Congress, for failure to comply with this subpoena issued by the Subcommittee, intend to release the material requested on June 5, 1969.

The underlying cause of action seeks a declaratory judgment, pursuant to Title 28, United States Code, Section 2201, declaring the subpoena duces tecum [1]

1. Pg. 2. The body of the subpoena requires the Trustees to:

"* * * produce any and all records for the period from January 1, 1968 to the present date showing the identity of students or other persons or organizations who took part in the seizure of Columbia University buildings or parts thereof without the permission of university authorities, as well as records showing the identity of officers and faculty advisers of Columbia University student organizations including Columbia University Students for a Demo-

**1028**

served upon Columbia University unconstitutional and void, and a permanent injunction prohibiting the Trustees from complying therewith.[2] Plaintiffs allege jurisdiction of this court under Title 28, United States Code, Sections 1331, 1332, 1343(3) (4), Title 42, United States Code, Sections 1981 et seq., and the First, Fourth, Fifth and Ninth Amendments to the Constitution of the United States.

Briefly, as background to the present litigation, Students for a Democratic Society (hereinafter referred to as "SDS") is an unincorporated association consisting of young people whose views may be considered to rest at the left of the political spectrum. They seek a radical, democratic program, the methods of which embody their vision, that is, a vision of a domocratic society " * * * where at all levels the people have control of the decisions which affect them and the resources on which they are dependent. * * * " (See Complaint at 2, Exh. B, annexed to Affidavit of William M. Kunstler, dated June 2, 1969.) In furtherance of the Society's objectives, its chapters and members have often been the focal point of the expression of opposition to certain foreign and domestic policies of the United States Government. In this respect, and in accordance with its aims and purposes, the organization has both directly and indirectly participated in campus disorders which have resulted from the spread of student unrest.

On February 17, 1969, during the First Session of the 91st Congress, the Senate passed Resolution 26 authorizing the Committee on Government Operations or any subcommittee thereof, from February 1, 1969 through January 31, 1970, to:

(1) make investigations into the efficiency and economy of operations of all branches of the Government, including the improper expenditure of Government funds in transactions between Government personnel and corporations or individuals. Cong.Rec.: S.Res. 26 § 1, 91st Cong., 1st Sess. (1969);

(2) make a full and complete study and investigation of crime and lawlessness within the United States which affects the national health, welfare and safety. Cong.Rec.: S.Res. 26 § 4, 91st Cong., 1st Sess. (1969);

(3) " * * * [M]ake a full and complete study and investigation of riot, violent disturbances of the peace, vandalism, civil and criminal disorder, insurrection, the commission of crimes in connection therewith, the immediate and long-standing causes, the extent and effect of such occurrences and crimes, and measures necessary for their immediate and long-range prevention and for the preservation of law and order and to insure domestic tranquility within the United States." (Emphasis supplied.) Cong.Rec.: S.Res. 26 § 5, 91st Cong., 1st Sess. (1969).

(4) report to the Senate by January 31, 1970 and " * * * if deemed appropri-

cratic Society, Students for a Restructured University, Student Afro-American Society, Hamilton Hall Steering Committee. Also records showing the extent and nature of assistance of any type rendered during this period of time by any agency of the United States Government or by any legal entity exempt by United States law from taxation, to any student or other person whose name is provided in compliance with the terms of this subpoena."

2. Pg. 2. Although plaintiffs have attempted by way of Rule 15(a) of the Federal Rules of Civil Procedure to add, as a

matter of right, as parties defendant to this action, John L. McClellan, Chairman of the Subcommittee, Henry M. Jackson, Sam J. Ervin, Jr., Edmund S. Muskie, Abraham Ribicoff, Robert P. Griffin, Karl E. Mundt, Charles A. Percy and Jacob Javits, the members thereof, and Jerome S. Adlerman and Donald F. O'Donnell, General Counsel and Chief Counsel of the Subcommittee, respectively, this Court has no jurisdiction over any of the above-named individuals in that none of them has been served with process, nor has any one been authorized to appear for them.

ate, include in its report specific legislative recommendations." Cong.Rec.: S. Res. 26 § 6, 91st Cong., 1st Sess. (1969).

It should be noted as well that the Legislative Reorganization Act of 1946, ch. 753, tit. I, 60 Stat. 812, provides that:

"(a) Each standing committee of the Senate, including any subcommittee of any such committee, is authorized to hold such hearings * * * [and] to require by subpoena or otherwise the attendance of such witnesses and the production of such correspondence, books, papers, and documents * * * as it deems advisable * * *."

Considering the complexity of the issues presently before this Court and the limited amount of time within which a determination herein must be made, I shall not be able to resolve all the problems which this litigation raises nor accompany those issues which I intend to rule on with the degree of analysis which would be appropriate under less pressing circumstances.

■ Briefly, with regard to jurisdiction, although this action has been framed as one to enjoin certain individuals from complying with the terms of a Congressional subpoena, it camouflages its essence, that is, one seeking to affirmatively quash a subpoena issued by the authority of a Congressional Committee, and in which the members of the Committee itself are most appropriately parties defendant. Needless to say, it is fundamental that before this Court could quash a subpoena, it must have jurisdiction over the persons or parties whom it would seek to affect or enjoin. It, therefore, boggles the imagination to think that plaintiffs herein could reasonably expect this Court to quash a Congressional subpoena where not one member of the Committee was served with a copy of the motion, nor where the Committee was not present or represented in court for the purpose of conferring jurisdiction. In re Motion to Quash Subpoenas and Vacate Service, 146 F. Supp. 792, 794 (W.D.Pa.1956).

■ Even assuming jurisdiction over this matter, however, the action is properly brought in the District of Columbia. It is established that in cases where jurisdiction is not solely founded on diversity of citizenship, the defendants' residence is the principal consideration for the purposes of venue. 28 U.S.C. § 1391 (Supp.1969). More specifically, where an action is primarily directed against a Senate subcommittee, whose interests would be most directly affected by a determination therein, it is in the interest of a centralized disposition of matters of national concern that the site of the litigation should be in the District of Columbia. More importantly, however, then District Judge Irving R. Kaufman, presently of the Court of Appeals for the Second Circuit, noted in Fischler v. McCarthy, 117 F.Supp. 643 (S.D.N.Y.), aff'd, 218 F.2d 164 (2 Cir., 1954), that it is undesirable to expose a subcommittee of the Senate to suits in various districts around the country. To allow otherwise would seriously impair the work of the Government. If this Court, therefore, were to sanction the bringing of suits against the recipients of Congressional subpoenas in the districts of their residence rather than against the Subcommittee itself in the district of its residence, it would be effectively thwarting the sound reasoning as set forth in *Fischler, supra.* Additionally, as an aside, it should be mentioned that where in *Fischler* the subpoena was returnable in New York, in this case the subpoena duces tecum is returnable in Washington, D. C., which, under the present state of facts, makes a finding of proper venue in the District of Columbia even more compelling.

■ Turning to the issue which I find to be of paramount importance in reaching my determination herein, that is, the doctrine of the separation of powers, a district court must exercise extreme caution not to encroach upon legislative functions, and, accordingly, must not assume jurisdiction over any matter which does not amount to a justiciable controversy. It is apparent

from the present posture of this case that the parties presently seeking the injunction are neither threatened by a taking of property belonging to them nor with any infliction of punishment, such as a Congressional citation for contempt. This Court will not attempt to protect the plaintiffs from a danger yet unknown. Pauling v. Eastland, 109 U.S.App.D.C. 342, 288 F.2d 126, 129, cert. denied, 364 U.S. 900, 81 S.Ct. 233, 5 L.Ed.2d 194 (1960); In re Motion to Quash Subpoenas and . Vacate Service, *supra* 146 F.Supp. at 795; Fischler v. McCarthy, *supra*, 117 F.Supp. at 649–650. Needless to say, the judiciary would construct an insurmountable barrier in the path of every Congressional investigating committee if it were to allow the bona fides of the legislative authorization to be challenged in a court of law by any person who could conceivably be affected by the testimony elicited or documents produced at a Senate hearing.

██ Even assuming, *arguendo*, that the questions presented herein were ripe for litigation, it would be incumbent upon the plaintiffs, prerequisite to obtaining a hearing, to make a substantial factual showing that the Congressional investigation is unrelated to any proper legislative function in that it is beyond the powers conferred upon Congress by the Constitution or that in authorizing the investigation by the Subcommittee, the Senate failed to spell out the Committee's jurisdiction and purpose with sufficient particularity to insure that compulsory process was only in furtherance of the legislative purpose. Watkins v. United States, 354 U.S. 178, 198–201, 77 S.Ct. 1173, 1 L.Ed.2d 1273 (1957). Absent a substantial factual showing in this regard, it is not the business of a district court to investigate the bona fides underlying legislative motives.[3] Having thoroughly considered the papers submitted by the plaintiffs in this cause, it is apparent that they contain mere conclusory allegations unsupported by any factual elaboration.

Plaintiffs, in support of their motion, have referred this Court to the following cases: 1) Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); 2) N.A.A.C.P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); 3) Sweezy v. New Hampshire, 354 U.S. 234, 77 S.Ct. 1203, 1 L.Ed.2d 1311 (1957); 4) McSurely v. Ratliff, 398 F.2d 817 (6th Cir. 1968); 5) Wolff v. Selective Service Local Bd. No. 16, 372 F.2d 817 (2d Cir. 1967); 6) Carmichael v. Allen, 267 F.Supp. 985 (N.D.Ga.1967); and 7) Baker v. Bindner, 274 F.Supp. 658 (W.D.Ky.1967). A brief review of these cases, however, reveals to this Court points sufficiently distinguishable from the instant application to compel a finding of their inapplicability herein.

The Supreme Court, in *Dombrowski*, was faced with an attack upon a Louisiana statute which sought to proscribe certain forms of expression. In answer to appellants' suit therein for federal court injunctive and declaratory relief to restrain appellees from prosecution or threatening to prosecute them under this statute. Louisiana contended that it would be inappropriate for the federal district court to interfere with the orderly processing of state criminal prosecutions since, it was alleged, the want of constitutionality of the Louisiana statute could be raised as a defense to any criminal prosecution. A three-judge District Court dismissed the complaint for failure to state a claim upon which relief could be granted. Thereafter, appellants were indicted under the state statute. In reversing the decision of the three-judge court, the Supreme Court noted that the mere possibility of an initial

3. Pg. 9. Plaintiffs' reliance on Cameron v. Johnson, 381 U.S. 741, 85 S.Ct. 1751, 14 L.Ed.2d 715 (1965), and 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968), for the proposition that the facts of this case warrant the granting of a hearing is ill-founded inasmuch as in the present case the plaintiffs are not facing prosecution herein under any statute alleged to be unconstitutional. Additionally, plaintiffs have alleged no facts to support their allegation of harassment.

erroneous application of constitutional standards by a state court will not ordinarily constitute irreparable injury warranting federal interference with orderly state proceedings. But the Court found that defense of the state's criminal prosecution would not assure adequate vindication of constitutional rights, and that a substantial loss or impairment of freedoms of expression would occur if appellants must await the state court's disposition, and ultimate review by the Supreme Court of any adverse determination. Finding that a chilling effect upon First Amendment rights might result from such prosecution regardless of its prospects of success or failure, the Court held the abstention doctrine inappropriate for cases where, unlike Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943), statutes are justifiably attacked on their face as an excessively broad attempt to regulate expression, or as applied for the purpose of discouraging protected activities. As the Court had previously noted in *Douglas, supra* at 163, 63 S.Ct. 877, courts of equity should in the exercise of their discretionary powers abstain from enjoining state criminal prosecutions save in those *exceptional* cases where such action is necessary to prevent *irreparable injury which is clear and imminent.*

The instant application does not reveal circumstances wherein either the Senate Resolution which authorized this Subcommittee's investigation or the subpoena duces tecum has a sufficiently chilling effect upon First Amendment rights which would result in irreparable injury that can be considered clear and imminent. There has been no institution of criminal proceedings or the threat thereof against SDS alleged herein, as there had been in *Button, Carmichael* and *Baker.* Neither the Senate Resolution nor the subpoena itself can be attacked on their face as abridging free expression or as applied for the purpose of discouraging protected activities.

As Judge Medina of the Court of Appeals for the Second Circuit noted in *Wolff, supra,* 372 F.2d at 823, federal courts will not hear a cause "when the action complained of has not caused or is not certain to cause injury to the complaining party". Judge Medina, however, found the abstention doctrine inappropriate therein since the effect of Wolff's reclassification itself from II-S to I-A as a result of his participation in a demonstration to protest American involvement in Viet Nam, was to immediately curtail the exercise of First Amendment rights. I do not find that either the Senate Resolution or the subpoena itself has this effect.

In *Sweezy,* petitioner was summoned to appear before the Attorney General of the State of New Hampshire, who had been made a one-man legislative investigating committee by the New Hampshire Legislature. During the course of the inquiry, petitioner declined to answer several questions on the grounds that they were not pertinent to the matter under inquiry and that they infringed upon an area protected under the First Amendment. He was thereupon adjudged in contempt by the state court and ordered committed to the county jail until purged of the contempt. The New Hampshire Supreme Court affirmed the order. The Supreme Court, in reversing, found nothing to connect the questioning of petitioner with the fundamental interest of the State in preventing the forcible overthrow of its government. It therefore followed that the use of the contempt power was not in accordance with the due process requirement of the Fourteenth Amendment to the Constitution. SDS, however, which has not been called upon to produce its records, which has not been found in contempt for any failure to comply with a Congressional subpoena and which has had none of its constitutional rights interfered with as the result of the subpoena duces tecum served upon the Trustees is not in a position to rely upon *Sweezy.* In this regard, it must be noted that the documents which were the subject of the subpoenas duces tecum in *McSurely,* were the prop-

erty of the petitioners therein. These documents, which had been seized from the McSurelys in aid of a prosecution under an unconstitutional statute, had been retained by the district court which pursuant to a Congressional subpoena had ordered the parties to the action and officers of the court to cooperate with the Senate Committee in making available such material as the Committee considered pertinent. The Court of Appeals for the Sixth Circuit in reversing the order of the district court, found that the right of the court to retain possession of the seized documents had expired when under the doctrine of *Dombrowski,* the district court declared the statute, in connection with which the documents were seized, unconstitutional. This case is clearly distinguishable in that SDS, like the district court in *McSurely,* has no right to possession of the records which are the subject matter of the subpoena duces tecum.

Accordingly, and for the above-stated reasons, the within motion is in all respects denied and the complaint dismissed.

So ordered.