Linus PAULING, Appellant,

v.

James O. EASTLAND et al., Appellees.

No. 15963.

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 1, 1960.

Decided Sept. 7, 1960.

Mr. A. L. Wirin, Los Angeles, Cal., for appellant.

Mr. Carl W. Belcher, Asst. U. S. Atty., with whom Mr. Oliver Gasch, U. S. Atty., was on the pleadings, for appellees.

Before PRETTYMAN, Chief Judge, and BAZELON and BASTIAN, Circuit Judges.

Statement of Chief Judge PRETTY-MAN on Appellant's Motion for Stay Pending Appeal and on the Merits.

PRETTYMAN, Chief Judge.

In view of the limitations of time upon the appellant in this matter I am filing this somewhat sketchy memorandum of my views without attempting to formalize them into an opinion and without awaiting the statements of my brethren.

Appellant Pauling, a resident and citizen of California, participated in the preparation of a petition addressed to the United Nations, urging an international agreement for the cessation of the testing of nuclear weapons. More than eleven thousand signatures of persons from forty-nine countries appeared on the petition. The matter came to the attention of the Subcommittee on Internal Security of the United States Senate and was made a subject of inquiry by that Committee. At the conclusion of an ex-

tensive colloquy Pauling was directed clearly and succinctly by Senator Dodd, presiding at the meeting of the Subcommittee, to appear at a later date, now fixed as September 15, 1960, and to bring with him "all signatures or purported signatures to the petition presented by you to the Secretary General of the United Nations on January 15, 1958, together with all letters of transmittal by which, or in connection with which, such signatures were transmitted to you or received by you." Pauling agreed to comply with the first part of the directive, pertaining to the signatories, but declined to comply with the second part, pertaining to the letters of transmittal. Given a choice between complying with the entire directive or, by refusal, rendering himself liable to a recommendation to the Senate for citation for contempt, Pauling brought a civil action in the District Court in the District of Columbia for a declaratory judgment. His prayer was that the court declare the directive of the Subcommittee void and enjoin enforcement of the directive and possible prosecution for failure to comply. He also moved for an interlocutory stay *pendente lite*. The District Court dismissed the complaint. Pauling appealed and applied here for a stay.

■ We do not initially consider the validity of the order of the Senate Subcommttee. We must first consider a threshold question, which is the availability of judicial consideration at this point under the circumstances which have thus far transpired. Judicial authority arises upon the happening of an event or the existence of a fact, or sometimes the threat of an event or a fact. It does not come into being *in vacuo*. In our jurisprudence courts do not have inherent power, absent specific Constitutional or legislative provision, to render advisory opinions. We have the declaratory judgment statute. But even to in-

voke that process the circumstances must bring the matter within the bounds of judicial power. There must be a justiciable controversy. The action calls for the exercise of a power to declare existing law upon existing facts.[1] The Supreme Court said, in Alabama State Federation of Labor, etc., v. McAdory:[2]

> "The requirements for a justiciable case or controversy are no less strict in a declaratory judgment proceeding than in any other type of suit. * * * This Court is without power to give advisory opinions. * * * It has long been its considered practice not to decide abstract, hypothetical or contingent questions, * * * or to decide any constitutional question in advance of the necessity for its decision, * * * or to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied, * * * or to decide any constitutional question except with reference to the particular facts to which it is to be applied * * *."

For declaratory judgment there must not only be a controversy, but the controversy must be justiciable.

Our initial question is whether the events which have thus far occurred and the factual situation which presently exists are such that the authority of the judiciary can be invoked at this point. No detention has occurred. The date when Pauling must decide whether to comply or not to comply with the directive has not arrived. He has not been cited for contempt or reported to the Senate for citation.

It seems quite clear that as a matter of basic general principle a court cannot interfere with or impede the processes of the Congress by proscribing anticipatorily its inquiries.[3] This is so not

---

1. 1 Anderson, Declaratory Judgments § 9, p. 46 (2d ed. 1951).

2. 325 U.S. 450, 461, 65 S.Ct. 1384, 1389, 89 L.Ed. 1725 (1945).

3. Mins v. McCarthy, 93 U.S.App.D.C. 220, 209 F.2d 307 (D.C.Cir. 1953); Fischler v. McCarthy, 117 F.Supp. 643 (D.C.S.D. N.Y.1954), affirmed 218 F.2d 164 (2 Cir. 1954).

only from the viewpoint of the Constitutional separation of powers between two branches of the Government but also from the practical viewpoint of simple procedural efficiency.

██ It is of course true, as Pauling argues, that the courts may review a judgment of conviction in a criminal case for contempt of the Congress and in such a proceeding may hold the attempted action by the Congress, or its Committee, invalid. But such a judgment by the court is clearly the exercise of a judicial function, similar to the duty and function of the court to review the impact of an enactment by the Congress upon the property or business of a citizen. If a person under indictment or under judgment of conviction is before a court and challenges the indictment or conviction, the court must apply the law, paying heed and giving effect, first of all, to Constitutional provisions. The indictment or conviction gives incidence to judicial power. There are circumstances under which a court of equity will enjoin criminal prosecutions or consider their validity in an action for declaratory judgment.[4] These cases constitute an exception to the general rule that courts of equity will not interfere with criminal prosecutions. Exceptional circumstances of compelling force create the exception. In the case at bar the present situation of appellant Pauling is as we have described it, and on the other hand, contrawise, is the right of the Senate to pursue its legislative duties without judicial interference. The separation of powers principle is one of the basic concepts of the Constitution. The courts have no power of interference, unless and until some event, such as arrest, indictment or conviction, brings an actual controversy into the sphere of judicial authority. The courts cannot interfere merely upon the petition of a person potentially liable to some such event. It is clear to me that the doctrine of the separation of powers prevails here.

██ Basing his argument upon the opinions of the Supreme Court in the Jurney[5] and McGrain[6] cases, Pauling argues that if he were under detention he could test by an action for habeas corpus the power of the Senate to try him for contempt; and that the same rights available to him in a proceeding for habeas corpus are available to him in an action for declaratory judgment when he is not under detention. But the purpose of the Great Writ is to test the validity of a detention. When a person is under detention he has been and is being deprived of his liberty, and this fact is sufficient to invoke judicial power. The same basic doctrine, which we have mentioned as to judicial power to review convictions, would seem to apply, under the Jurney and McGrain opinions, to judicial power when a person is under detention but not under conviction. I think the incidence of judicial power invoked by petition for habeas corpus, an extraordinary remedy, available to test the legality of a detention, does not occur when no detention has occurred. The facts which would bring the dispute within the orbit of judicial power have not taken place. The rights available under the Writ do not arise when the basic justification for the Writ does not exist. A holding by a court that the judicial power available under the Writ to a person under detention is likewise available to any person under any circumstances, detained or not, would be flatly contrary to the history, intent, purpose, and undeviating interpretation of the Writ.

Although on argument here Pauling concedes that he could not obtain from a court an injunction against the contem-

4. See, e. g., Terrace v. Thompson, 263 U.S. 197, 44 S.Ct. 15, 68 L.Ed. 255 (1923); Packard v. Banton, 264 U.S. 140, 44 S. Ct. 257, 68 L.Ed. 596 (1924); Evers v. Dwyer, 358 U.S. 202, 79 S.Ct. 178, 3 L. Ed.2d 222 (1958); Borchard, Declaratory Judgments 1020 et seq. (2d ed.

1941); 2 Anderson, Declaratory Judgments 1471 et seq. (2d ed. 1951).

5. Jurney v. MacCracken, 294 U.S. 125, 55 S.Ct. 375, 79 L.Ed. 802 (1935).

6. McGrain v. Daugherty, 273 U.S. 135, 47 S.Ct. 319, 71 L.Ed. 580 (1927).

plated action of the Senate Subcommittee, or of the Senate, he contends that a declaratory judgment in respect to his rights and in respect to the validity of the contemplated action would not really interfere with the Senate. But such a differentiation seems to me to be without substance. It is unthinkable to me that, if the courts should hold a specific directive of a Committee of the Congress unconstitutional and void, the Committee would nevertheless attempt to enforce that directive. So, as I view it, a declaratory judgment would be as effective an impingement upon and interference with legislative proceedings as a flat injunction would be. Thus I think that a declaratory judgment respecting the validity of contemplated Congressional action would violate the doctrine of the separation of powers and would be an illegal impingement by the judicial branch upon the duties of the legislative branch.

The material which appellant Pauling refuses to produce consists of the letters by which various persons transmitted to him signatures for the petition. He says that production of these letters would disclose to the Congress names of the people who secured the signatures. He says he will not reveal their names because of his fear of "reprisals" against them. By reprisals he says he means possible loss of employment, blacklisting, ostracism, etc. He argues that the directive of the Subcommittee is therefore violative of his First Amendment rights. But, as I have already indicated, I do not reach that question, i. e., the validity of the directive, because I do not find judicial power to consider it in the present posture of the case.

In summation, it is perfectly clear in my view that, if Pauling should be cited for contempt and thereafter convicted, either by the Senate or by a court, of contempt, the courts will review that judgment and may in that proceeding pass upon the validity of the order of the Subcommittee. It is equally clear to me that the courts have no power in the proceeding presently before us to pass upon, either by injunction or by declaratory judgment, the validity of the Subcommittee order. I have therefore voted to affirm.

Circuit Judge BASTIAN concurs in the foregoing statement.

Circuit Judge BAZELON concurs in the result.