James A. DOMBROWSKI et al.,
Appellants,

v.

Colonel Thomas D. BURBANK et al.,
Appellees.

Nos. 18435, 18544.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 15, 1964.

Decided Feb. 4, 1966.

Mr. William M. Kunstler, New York City, and Mr. Milton E. Brener, New Orleans, La., of the bar of the Supreme Court of Louisiana, pro hac vice, by special leave of court, with whom Mr. Walter E. Dillon, Jr., Washington, D. C., was on the brief, for appellants.

Mr. Roger Robb, Washington, D. C., and Mr. Joseph M. Hannon, Asst. U. S. Atty., with whom Mr. David C. Acheson, U. S. Atty. at the time the brief was filed, Messrs. Frank Q. Nebeker and Alan Kay, Asst. U. S. Attys., were on the brief, for appellees Eastland and Sourwine.

Before WASHINGTON, Senior Circuit Judge, and BURGER and McGOWAN, Circuit Judges.

## PER CURIAM:

The appellants in this case are a Louisiana civil rights organization and its executive director. Their complaint in the District Court sought injunctive relief and damages under 42 U.S.C. §§ 1983 and 1985. The first of these appeals, No. 18,435, is from an order dismissing the claim for injunctive relief. The second, No. 18,544, is from the grant of appellees'[1] motion for summary judgment on the claim for damages.

The complaint alleged in substance that various Louisiana officials, in league with appellees, illegally searched the offices of appellants and seized documents and records.[2] These papers, while in the possession of the Louisiana officials, were subjected to a subpoena issued in the name of the United States Senate Internal Security Subcommittee. Compliance with this subpoena resulted in the transfer of the seized papers to the custody of the Senate Subcommittee which, in plenary session, made provision for their handling by the resolution set forth in the margin.[3] Appellants, asserting

---

1. Although the complaint named a number of defendants, most of these appear to be residents of Louisiana upon whom service of process was not effected. Appellees are the only two defendants who were served; and they are, respectively, the Chairman and the Chief Counsel of the United States Senate Internal Security Subcommittee.

2. A detailed description of this action is contained in Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). The Supreme Court in that case, decided while the instant appeals were under submission, invalidated the Louisiana statute under which the Louisiana officials purported to act, and directed that the relief to be afforded by the District Court in Louisiana should include "ordering immediate return of all papers and documents seized."

3. The full entry in the Subcommittee's minutes is as follows:

November 14, 1963

Upon the conclusions of the testimony of the second of two witnesses heard in executive session, the Subcommittee considered and discussed the handling of material subpoenaed from the Joint Legislative Committee on Un-American Activities of the State of Louisiana.

Present: Senators Eastland, Dodd, Hruska, Dirksen, and Scott.

After discussion, and on motion of Senator Dirksen, it was ORDERED that the Chairman be authorized to appoint a Task Force consisting of Senators Eastland, Johnston, Dodd, Hruska and Scott to evaluate the subpoenaed material progressively with respect to its value to the Subcommittee's investigation and to make determination from time to time respecting particular papers, documents,

that the subpoena was deficient in authority from the Subcommittee, seek damages, as well as an injunction requiring appellees to return their records and to refrain from using them.

## No. 18,435

Appellants' complaint alleged that the seized materials were in the possession of appellees. However, the affidavits submitted in opposition to appellants' motion for a preliminary injunction revealed that the Senate Subcommittee had incorporated the documents in its hearing record and made express provision for their examination and disposition by the collective act of the Subcommittee. See note 3 *supra*.

 Since the seized materials must thus be regarded as in the possession of the Senate Subcommittee,[4] a judicial command addressed solely to appellees— one member of the Subcommittee and one of its staff—cannot be assured of effect. The test, set forth by the Supreme Court in Williams v. Fanning, 332 U.S. 490, 494, 68 S.Ct. 188, 189, 92 L.Ed. 95 (1947), of the indispensability of a superior to a

suit for injunctive relief against a subordinate is whether "the decree which is entered will effectively grant the relief desired by expending itself on the subordinate official who is before the court." Cf. Hynes v. Grimes Packing Co., 337 U.S. 86, 69 S.Ct. 968, 93 L.Ed. 1231 (1949). Of course, there is only partly present in this case a relationship between a superior and a subordinate official as there was in *Williams;* nevertheless, the problem of requiring a subordinate official to undertake acts capable of accomplishment only by his superior, which seems central to the purpose of the *Williams* test, also characterizes the difficulties implicit in requiring either of the appellees to return documents held by the full Senate Subcommittee.[5]

The dismissal of appellants' request for injunctive relief to prevent appellees from using the seized records also flows from the undisputed fact that the materials are in the custody of the Subcommittee. Since the documents are now held by the Subcommittee, they are accessible to the appellees only by virtue of

---

or other material to be inserted verbatim in the record of the Subcommittee; that all of the material not clearly irrelevant to the Subcommittee's investigation of Communist activity generally, of Communist front activity, of Communist infiltration of organizations and groups, and/or the source of funds for Communist or Communist front activities be ordered into the Committee's hearing record by reference subject to the later determination of the Task Force respecting particular items which should be entered into the record verbatim; and that all of the original records obtained under the subpoena be photostated for the permanent records of the Subcommittee and, when so photostated, be returned promptly to the possession of the Joint Legislative Committee on Un-American Activities of the State of Louisiana.

 James O. Eastland Chairman
I consent and agree to the foregoing procedure.
 John F. McClellan .
 Olin D. Johnston
 Roman L. Hruska

4. Appellants contend that the trial court, in dismissing the prayer for injunctive relief, should have limited its consideration

to the allegations of the complaint. Reliance is placed upon Mast, Foos & Co. v. Stover Mfg. Co., 177 U.S. 485, 20 S.Ct. 708, 44 L.Ed. 856, (1900), for the proposition that all of the allegations of the complaint must be regarded as true on a motion to dismiss a bill in equity on its face. But even in Mast, Foos & Co., the Court regarded consideration of affidavits as appropriate. 177 U.S. at 495, 20 S.Ct. 708. See also Rule 12, FED.R. CIV.P.; MOORE, FEDERAL PRACTICE ¶ 12.09 (2d ed. 1964). What the Court disapproved was dismissal when a question of fact was involved. On this record, in light ·of the affidavit setting out the Subcommittee resolution, the dismissal does not involve the resolution of any question of fact which may fairly be regarded as disputed.

5. See also Blackmar v. Guerre, 342 U.S. 512, 72 S.Ct. 410, 96 L.Ed. 534 (1952). That was a suit for reinstatement by a discharged government employee. Because the Civil Service Commissioners were not parties to the suit, and the only defendant before the court could not grant the requested relief without their approval, the Court held that dismissal of the suit was proper.

their official positions with that body. We cannot prohibit, nor are we asked to prohibit, appellees' use of the documents in the course of their official business for the Subcommittee; and neither do appellants seek any restraint upon the Subcommittee itself. See Hearst v. Black, 66 U.S.App.D.C. 313, 87 F.2d 68 (1936), where this court refused to enjoin a congressional committee from using information it had obtained by illegal means. There, considerations resting upon a proper allocation of powers and responsibilities among the co-ordinate branches of the federal system impelled this court not to exercise its equity powers.[6] In any event, however, the relief requested here is directed solely at appellees. Disclosure of the documents in the course of the Subcommittee's official action would not be prevented by the decree prayed for against appellees; and all other members of the Subcommittee would still have unfettered use of the documents. "A court of equity may refuse to give any relief when it is apparent that that which it can give will not be effective or of benefit to the plaintiff." Virginian Railway Co. v. System Federation No. 40, 300 U.S. 515, 550, 57 S.Ct. 592, 601, 81 L.Ed. 789 (1937).

*No. 18,544*

■ Appellees contend that the grant of their motion for summary judgment was proper because (1) appellants failed to put forward a serious claim that appellees were parties to a knowing concert of action with the state officials, and (2) in any event, the doctrine of legislative immunity insulates appellees from

suit. Were only the former involved, we might have considerable difficulty in concluding that there were no disputed issues of fact requiring exploration and resolution by means of a trial. But we need not pursue that inquiry since we think the record before the District Court contained unchallenged facts of a nature and scope sufficient to give appellees an immunity against answerability in damages for actions taken in the course of their legislative activities.[7]

The issue, in the large, is whether the actions taken with respect to appellants' records were within the scope of appellees' duties for the Senate Subcommittee. Citing our decision in Shelton v. United States, 117 U.S.App.D.C. 155, 327 F.2d 601 (1963), appellants argue that the subpoenas were invalid because they were issued and executed without the prior authorization of the Subcommittee, as distinct from its Chairman. *Shelton,* however, held only that a person compelled to testify before a Senate Subcommittee by an invalid subpoena could not be convicted of contempt for failing to respond to the Subcommittee's questions. No necessity existed there for considering the dangers of inhibiting the legislative process by the threat of personal liability to those engaged in it. These are at the core of the public policies reflected in the immunity doctrine.[8]

The Internal Security Subcommittee is required by Senate Resolution to investigate "the extent, nature and effect of subversive activities in the United States * * *." S.Res. 62, 88th Cong. There is no question that the Senate may legitimately conduct such investigations. As

---

6. See also Jordan v. Hutcheson, 323 F.2d 597 (4th Cir. 1963); Pauling v. Eastland, 109 U.S.App.D.C. 342, 288 F.2d 126, cert. denied, 364 U.S. 900, 81 S.Ct. 233, 5 L. Ed.2d 194 (1960); Mins v. McCarthy, 93 U.S.App.D.C. 220, 209 F.2d 307 (1953). See generally *Developments in the Law-Remedies Against the United States and Its Officials,* 70 Harv.L.Rev. 827 (1957).

7. It is settled by Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), that such immunity provides a defense to actions brought for damages

under the Civil Rights Act. See also Comment, 40 Notre Dame Law. 70 (1965); Note, 68 Harv.L.Rev. 1229 (1955). For general discussions of the Civil Rights Act, see Comment, 49 Calif. L.Rev. 145 (1961), Note, 66 Harv.L. Rev. 1285; Comment, 74 Yale L.J. 1462 (1965).

8. That different considerations are involved when the personal liability of the legislators is involved is illustrated by the facts in Yellin v. United States, 374 U.S. 109, 83 S.Ct. 1828, 10 L.Ed.2d 778 (1963), which was relied upon in *Shelton.*

has been said, "The power of the Congress to conduct investigations is inherent in the legislative process. That power is broad." Watkins v. United States, 354 U.S. 178, 187, 77 S.Ct. 1173, 1179, 1 L.Ed.2d 1273 (1957); see also Tenney v. Brandhove, 341 U.S. 367, 377–378, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). Appellants' own affidavits establish that, for more than a decade, the Subcommittee has evinced an active interest in appellants. As the Subcommittee's Chairman and Chief Counsel, respectively, appellees have immediate responsibilities in the Subcommittee's operations. It is true that the records held by the Louisiana Committee were subpoenaed without prior authorization from the Subcommittee, although the Chairman expressly approved in advance the action proposed to be taken. But this action was shortly brought by appellants to the attention of the Subcommittee as a whole, which discussed the matter of the subpoenaed papers. After such consideration the Subcommittee, by formal resolution, incorporated the papers in its hearing record, and provided for their ultimate disposition.

■ Whether this apparently approving action by the full Subcommittee would serve as a *nunc pro tunc* ratification and consequent validation of the subpoena for all purposes, we need not decide. We do regard it as serving to keep appellees' acts in pursuing the Subcommittee's long-standing interest in appellants within the mainstream of legislative effort to a degree adequate to protect against liability in damages for issuing and executing the subpoena. Appellees acted in an area in which the Subcommittee was competent to function.

Had appellees received Subcommittee authorization before issuing the subpoena, the official nature of their actions would be evident. Acting first and receiving authorization later does not, under the facts of this case, put their actions beyond the pale of official legislative activity, at least for purposes of the immunity doctrine.[9]

■ Nor does Wheeldin v. Wheeler, 373 U.S. 647, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963), compel a different result. The plaintiff there sought damages from an investigator for the House Un-American Activities Committee for the allegedly malicious act of serving a subpoena which had been approved by no one, either before or after its issuance. In the Supreme Court the Solicitor General conceded that the complaint on its face showed the defendant to be acting wholly outside the scope of his official duties; and this concession prompted the Court, in the course of otherwise holding that no federal cause of action was made out by the complaint, to note that the immunity doctrine had no relevance. Here, unlike *Wheeldin*, the record before us shows without dispute not only that the subpoena was expressly authorized in the first instance by the Chairman of the legislative committee, but also that the full committee ratified the action taken when the matter was promptly brought to its attention. Even if it be assumed that there remained a legal hiatus in the title of the subpoenaing authority, immunity from suit is not thereby destroyed. As was said by the dissenting judge in *Wheeldin*: "The question of authority is, of course, distinct from that of immunity from civil suit. Even an unauthorized act may be within the scope of

9. What appellants essentially contend is that appellees, by acting without prior authorization, acted with a malicious purpose, *i.e.*, to further a conspiracy to deprive appellants of their civil rights. Tenney v. Brandhove, however, precludes inquiry into appellees' motives to determine the legitimacy of their conduct:

The claim of an unworthy purpose does not destroy the privilege. * * * The privilege would be of little value if they [legislators] could be subjected to the

cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives. The holding of this Court in Fletcher v. Peck, * * * that it was not consonant with our scheme of government to inquire into the motives of legislators, has remained unquestioned. 341 U.S. at 377, 71 S.Ct. at 788.

the immunity, so long as it is within the 'outer perimeter' of the officer's 'line of duty.'"[10] 373 U.S. at 656 n. 4, 83 S.Ct. at 1447. This is, of course, "a matter of defense," but summary judgment may rest upon such a defense where, as here, its existence is established by facts which are undisputed.

Finally, appellants contend that because they charge appellees to have conspired with various officials under the color of *state* law, appellees can claim no immunity because of their positions with the Senate Subcommittee. It is argued that appellee's positions with that body must be regarded as incidental and irrelevant to the present suit; and that appellees are to be viewed as in the position of any other citizen. This, however, ignores that the conduct of which appellants complain (appellees' activities pursuant to the subpoena) could not have been undertaken had appellees had no official legislative positions and responsibilities.[11]

The judgments of the District Court are

Affirmed.

WASHINGTON, Senior Circuit Judge, did not participate in this decision.

10. Judge Learned Hand once put the point in these terms:

"[T]o submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put it to satisfy a jury of his good faith. * * * [I]t has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." Gregoire v. Biddle, 177 F. 2d 579, 581 (2d Cir. 1949), cert. denied, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950).

See also Barr v. Mateo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); Cooper v. O'Connor, 69 U.S.App.D.C. 100,

99 F.2d 135, 118 A.L.R. 1440, cert. denied, 305 U.S. 643, 59 S.Ct. 146, 83 L.Ed. 414 (1938); Brownfield v. Landon, 113 U.S. App.D.C. 248, 307 F.2d 389, cert. denied, 371 U.S. 924, 83 S.Ct. 291, 9 L.Ed.2d 232 (1962); Bershad v. Wood, 290 F.2d 714 (9th Cir. 1961).

11. Although it has been suggested that the protection of the legislative immunity doctrine does not extend to appellee Sourwine, cf. Kilbourn v. Thompson, 103 U.S. 168, 26 L.Ed. 377 (1880), what was said in Barr v. Matteo about the immunity of executive officials seems persuasive here. "The privilege is not a badge or emolument of exalted office, but an expression of a policy designed to aid in the effective functioning of government. The complexities and magnitude of governmental activity have become so great that there must of necessity be a delegation and redelegation of authority as to many functions * * *." 360 U.S. at 572–573, 79 S.Ct. at 1340. See also, Cooper v. O'Connor, *supra;* Bershad v. Wood, *supra.*