John DOE et al.,

v.

John L. McMILLAN et al.

No. 71–1027.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 28, 1971.

Decided March 11, 1971.

Tamm, Circuit Judge, dissented and filed opinion.

Messrs. J. Kirkwood White, and Dennis Dutterer, Washington, D. C., with whom Mrs. Jean Camper Cahn, Washington, D. C., was on the pleadings, for appellants.

Mr. David P. Sutton, Asst. Corporation Counsel, D. C., with whom Messrs. C. Francis Murphy, Acting Corporation Counsel, and Richard W. Barton, Asst. Corporation Counsel, were on the pleadings, for the District of Columbia appellees.

Mr. John A. Terry, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and Joseph M. Hannon, Asst. U. S. Atty., were on the pleadings, for the Federal appellees.

Before FAHY, Senior Circuit Judge, and TAMM and LEVENTHAL, Circuit Judges.

PER CURIAM:

Plaintiff-appellants in this case are students at Jefferson Junior High School and their parents. Defendant-appellees are (1) the Chairman and Members of the Committee on the District of Columbia of the House of Representatives, (2) the Clerk, Staff Director, Counsel and a consultant to the Committee, (3) the Superintendent of Public Documents and the Public Printer, i. e., the Government Printing Office, (4) the President and Members of the Board of Education of the District of Columbia, (5) the Superintendent of the Public Schools of the District of Columbia, (6) the Principal of Jefferson Junior High School, (7) a teacher at Jefferson Junior High School, (8) a District of Columbia Police Officer acting as an investigator for the Committee, and (9) the United States.

Appellants brought a class action in the District Court for damages and for an injunction against further publication and distribution of certain school documents identifying them personally. Notably, they sought to enjoin further publication and distribution of a House District Committee Report on the District of Columbia school system containing copies of (1) student absentee lists, (2) letters, memoranda, and other papers regarding student disciplinary problems, and (3) student test papers, because these documents included their names and addresses.[1] Appellants allege that such publication violates their constitutional right to privacy.

The District Court denied appellants' motion for temporary relief and dismissed their complaint. This appeal followed. Appellants moved for summary reversal or an injunction pending appeal. On January 14, 1971, this Court issued an injunction to preserve the status quo until responses were filed. The

1. Investigation and Study of the Public School System of the District of Columbia, Report of the Committee on the District of Columbia, House of Representatives, H.R.Rep.No.91–1681, 91st Cong., 2d Sess. (Dec. 8, 1970).

order did not enjoin members of the Committee or the United States, but did prohibit the other defendants from any further publication and distribution of such papers, in the Report or otherwise, as long as the papers contained the names and addresses of pupils and parents. The appellees have now responded, and moved for summary affirmance.

■ This appeal raises difficult questions concerning appellants' claimed right of privacy and the immunity claimed by appellees acting pursuant to the authority of the House District Committee. Summary treatment of these issues would be inappropriate. We therefore deny appellants' motion for summary reversal and appellees' motions for summary affirmance. Instead, we order that the case be set for argument on an expedited basis as soon as possible after the briefs are filed.

■ With regard to appellants' request for continuation of the injunction pending appeal, the Court is sensitive to the importance of avoiding "needless friction" between the judiciary and the legislature.[2] However, our constitutional obligations require us to take into account the claim of irreparable harm caused by continued publication and distribution of the Report containing names and addresses of pupils and parents. Appellants' claim that they will be publicly stigmatized is substantial, and their claim of invasion of constitutional privacy, and lack of proper legislative purpose to warrant such invasion to the extent of broadcasting names and identities, is worthy of serious consideration on the merits. The dimensions of the constitutional issue have been heightened by a recent Supreme Court decision that official publication of a list of names stigmatizing individuals, without notice or hearing, violates due process of law; two Justices concluded that the list con-

stituted a bill of attainder, a point not reached by the majority.[3]

In one respect, we conclude that the injunction previously entered should be modified. The simple fact of a student's absence from public school, like his presence there, is less significant in terms of protected privacy than his performance on a particular test or his disciplinary difficulties. We modify the injunction to permit the publication of names of students absent from school.

The injunction as so modified will be continued in effect pending the expedited litigation. We reiterate that this order does not apply to the Congressmen, and we further stress that it permits the Committee staff and other defendants to participate in publication and distribution of the Report following excision of the names and addresses of particular individuals from test papers and from any references to disciplinary problems. If this Court ultimately upholds the authority to publish the identities of individuals, they could be added in a supplemental report. The Court has not been advised of an imminent legislative need for the enjoined defendants to participate in immediate publication and distribution of names and addresses. Under the present circumstances, we conclude that continuation of the injunction as modified, pending determination of an expedited appeal, is a responsible exercise of our duties.

So ordered.

TAMM, Circuit Judge (dissenting):

I would deny appellant's motion for summary reversal and grant appellee's motion for summary affirmance. In my view, no purpose is served by further delaying a disposition of this cause, albeit it nominally permits the filing of additional briefs which in actuality can only contain material which is repetitious of

2. Ansara v. Eastland, 142 U.S.App.D.C. ——, 442 F.2d 751 (1971) (at 752). See also Railroad Comm'n v. Pullman Co., 312 U.S. 496, 500, 61 S.Ct. 643, 85 L.Ed. 971 (1941); Cole v. McClellan, —— U.S. App.D.C. ——, 439 F.2d 534 (1970) (at

535); Davis v. Ichord, 142 U.S.App.D.C. ——, 442 F.2d 1207 (1970) (at 1217–1220) (Leventhal, J., concurring).

3. Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).

882

what is now before us. I see no purpose in now cautiously walking around the quicksand of a separation-of-powers question by delaying a head-on confrontation of the problem. No number of additional briefs or arguments can erase or hide the nature of the problem already briefed and argued before us.

Challenged herein is the publication by the House Committee on the District of Columbia of a report on the school system of the District of Columbia which was issued on December 8, 1970, as "Investigation and Study of the Public School System of the District of Columbia, Report of the Committee on the District of Columbia, House of Representatives, H.R. Rep. No. 91,1681, 91st Cong., 2d Sess." The District Judge properly found that this report had a valid legislative purpose growing out of the legislative power of Congress over the District of Columbia. U.S.Const. art. I, § 8, cl. 17. The self-stated object of the report is "to give a realistic view of this troubled school, and the lack of administrative efforts to rectify the multitudinous problems there." Certainly a conscientious Congress, called upon to authorize the expenditure of more than $150,000,000 a year[1] of the taxpayers' money for the operation of a public school system, is justified and required to determine if the school population is receiving full value from this investment.

The challenged report does set out attendance lists, history test papers, and correspondence on disciplinary problems all of which contain the names of students. Certainly these documents constitute the best available evidence of the facts which they portray. Also contained in the report are the oral answers of witnesses before the committee who furnished the names of students participating in and creating disciplinary problems (see page 212 of the report), and yet there appears to be no question raised as to the legality or propriety of this testimony. As a matter of eviden-

tiary appraisal I see no difference in the status of documents containing names of individuals and oral testimony of the same type.

Of major concern to me, however, is the question of what, if any, authority this court has to pass upon the action of Congress in this situation. While I may doubt both the necessity and wisdom of the inclusion of data identifying individual students, I am required by time-tested law to recognize the legality, if not the virginity, of congressional power. My judicial responsibility requires me to validate, when called upon to do so, the legality of congressional action which is within the legislative power as defined by the Constitution and case law. This recognition of the limitations upon judicial interference with the legal actions of the legislative branch has been recognized since 1805, when Chief Justice Marshall, speaking for the Court in United States v. Fisher, 6 U.S. (2 Cranch) 358, 395, 2 L.Ed. 304 (1805), stated: "Congress must possess the choice of means, and must be empowered to use any means which are in fact conducive to the exercise of a power granted by the Constitution." It is my view that the majority opinion ignores the mandate expressed by Marshall that "to undertake here to inquire into the decree of its necessity would be to pass the line which circumscribes the judicial department and to tread on legislative ground. This Court disclaims all pretensions to such a power." McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 422, 4 L.Ed. 579 (1819). I recognize that "[t]he Government which has the right to do an act, and has imposed on it, the duty of performing that act, must, according to the dictates of reason, be allowed to select the means; and those who contend that it may not select *any* appropriate means, *that one particular mode* of *effecting the object* is excepted, take upon themselves the burden of establishing that exception." McCulloch v. Maryland, *supra* at 409. (Em-

1. The current press indicates the requested budget for the next fiscal year's operation of the public school system of the District of Columbia exceeds $150,000,000.

phasis added.) I do not believe the majority opinion establishes any exception applicable to this case. The line of cases supporting this doctrine is too well established to require lengthy citation.

I am, in addition, concerned that the majority predicates its action on an appellant's claimed "right of privacy." It does seem to me that the vagaries created in this area since New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), establish an emblem of identity as the legal measure of not only the breadth and depth of this "right" but even of its existence in individual cases. A licensed physician and the medical director of a Planned Parenthood League have a right to privacy (Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), but an elected county official has no such right. New York Times v. Sullivan, *supra*. I am unable by any amount of legal engineering to perform such a task of constitutional alchemy as to find a legal "right to privacy" in truant school children, but no such right in a United States Senator. Pearson v. Dodd, 133 U.S.App.D.C. 279, 410 F.2d 701, cert. denied, 395 U.S. 947, 89 S.Ct. 2021, 23 L.Ed.2d 465 (1969).

I respectfully dissent.