**John DOE et al., Plaintiffs,**

v.

**John L. McMILLAN et al., Defendants.**

**Civ. A. No. 56–71.**

United States District Court, District of Columbia.

April 29, 1974.

Jean Camper Cahn, J. Kirkwood White, Dennis Dutterer, Washington, D. C., for plaintiffs; Jeffrey Fornaciari,[*] Washington, D. C., of counsel.

Jeffrey Axelrad and Harland F. Leathers, Civil Division, Dept. of Justice, Washington, D. C., for Government Printing Office, defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOHN H. PRATT, District Judge.

On January 11, 1971, shortly after the action was filed, the District Court dismissed the action as to all defendants. Thereafter, on March 11, 1971, the Court of Appeals issued an order granting some injunctive relief pending disposition of plaintiffs' appeal. Doe v. McMillan, 143 U.S.App.D.C. 157, 442 F. 2d 879. On January 20, 1972, the Court of Appeals affirmed the decision of the District Court. Doe v. McMillan, 148 U.S.App.D.C. 280, 459 F.2d 1304. On May 29, 1973, the Supreme Court remanded this case to the Court of Appeals for further proceedings consistent with the Supreme Court's opinion. Doe v. McMillan, 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912. By order filed October 15, 1973, the Court of Appeals ordered "that this case is remanded to the United States District Court for further proceedings not inconsistent with the May 29, 1973 opinion of the Supreme Court."

[*] A member of the Bar of the State of New Mexico.

Accordingly, the matter is now before the Court for resolution in accordance with the Supreme Court's May 29, 1973 opinion.

Upon consideration of the record, the motions, affidavits and memoranda of the parties, and after hearing argument of counsel, the Court hereby makes the following Findings of Fact and Conclusions of Law.

### Findings of Fact

1.  On January 8, 1971, plaintiffs, under pseudonyms, brought this action in the United States District Court for the District of Columbia on behalf of themselves, their children, and all other children and parents similarly situated. The named defendants included the Public Printer at the time, Mr. Adolphus N. Spence and the Superintendent of Documents, Mr. Robert E. Kling.

2.  Mr. Spence passed away on January 11, 1972.

3.  By resolution adopted February 5, 1969, H.Res. 76, 91st Cong., 1st Sess., 115 Cong.Rec. 2784, the House of Representatives authorized the Committee on the District of Columbia or its subcommittee "to conduct a full and complete investigation and study of . . . the organization, management, operation, and administration of any department or agency of the government of the District of Columbia * * * [or] of any independent agency or instrumentality of government operating solely within the District of Columbia. . . ."

4.  On December 8, 1970, a Special Select Subcommittee of the Committee on the District of Columbia submitted to the Speaker of the House of Representatives a report, H. Rept. No. 91–1681, 91st Cong., 2nd Sess. (1970), (hereinafter referred to as "the Report"), which was stated to be the Report directed to be prepared by said H. Res. No. 76.

5.  On the same day, December 8, 1970, the Report was referred to the Committee of the Whole House on the State of the Union and was ordered printed. 116 Cong. Rec. 40311 (1970). Thereafter the Report was printed and distributed by the Government Print-ing Office pursuant to Title 44, United States Code, as more particularly described below.

6.  The printing of the Report was routine, usual and as a matter of course followed the same regular, customary and orderly procedures as requisitions for all Congressional printing and binding of bills, laws and reports from Congressional Committees.

7.  A total number of 2,557 copies of the Report were delivered to offices of the House of Representatives on December 15, 1970. A total number of 796 copies of the Report were delivered on December 28, 1970 to various departments of the Government. Two copies of the Report were retained by the Production Department of the Government Printing Office.

8.  Seven hundred and ninety-six copies of the Report were placed, and are still secured, in a locked security cage at the Government Printing Office since a restraining order was issued by the United States Circuit Court of Appeals for the District of Columbia on January 14, 1971, No. 71–1027, enjoining Adolphus N. Spence, Public Printer, and Robert E. Kling, Superintendent of Documents, from further printing and distribution of said H. Rept. No. 91–1681, 91st Cong., 2nd Sess., December 8, 1970, so long as it contained the names and addresses of pupils and parents.

9.  In addition to the quantity of Reports scheduled for distribution, 54 extra copies of all House Reports have been for many years, and are, routinely scheduled to be printed and are designated as "emergencies", although the number of emergency copies actually available may vary from job to job depending on spoilage, since it is impossible to determine the exact number finally available until press and binding operations are completed. Emergency copies are retained in the Binding Division of the Government Printing Office, but a record of the number of Emergency copies actually on hand is not made. They are considered as extra copies

made to fulfill requirements in case of shortage, deficiencies, or office needs. After a reasonable period of time has elapsed (usually about three months) any surplus emergency copies are reduced to waste scrap together with other waste paper through an automatic process of shredding, baling, and then sold as salvage paper.

10. In the instant case, following the usual, normal and customary procedure, the emergency copies of the Report were retained by the Binding Division as described. One of the extra copies was retained by the Library of the Superintendent of Documents for the normal and customary purpose of preparation for microfilming by the Library of Congress. The copy was not microfilmed and is still in the possession of the GPO.

11. One of the extra copies was retained by the Library of the Superintendent of Documents as a catalog copy and is still in the possession of the GPO.

12. One of the extra copies was placed in the work jacket for billing purposes and is still in the possession of the GPO.

13. One of the extra copies was delivered to the Office of General Counsel, U. S. Government Printing Office, for use in the present litigation and is still in the possession of the GPO. There were no requisitions submitted by the Superintendent of Documents for copies for sale and distribution.

14. A recent survey by Government Printing Office Production personnel disclosed that 796 copies of the Report, as described in paragraph 8, are still secured in the security cage in Room C319, Security area, U.S. Government Printing Office. No emergency copies exist other than those accounted for herein. To further verify this, a thorough search of the U.S. Government Printing Office Bindery Production area was conducted during the month of December 1973, and a complete search of the entire GPO production area was conducted during the week of February 4, 1974. It was reported that the 796 copies of the Report remained secure in the locked cage and that there is no evidence or record of the existence of any other emergency copies. Inquiries and discussions directed to present former officials, particularly the Night Superintendent of Binding, failed to provide any further information regarding the Report. Consequently, in the normal course of events, and as standard office procedure they would have been destroyed by automatic shredding, baling and then sold as waste paper.

15. No additional copies of the Report have ever been printed at the United States Government Printing Office, nor were any copies of the Report ever delivered, shipped, issued or placed under the custody or control of the Superintendent of Documents for distribution to State libraries, designated depositories, foreign legations, or other agencies; no copies of the Report were ever distributed, issued, sent in response to mail orders through the United States Postal Service, or sold by the Superintendent of Documents and delivered to the public in any of the retail bookstores operated in the metropolitan Washington, D. C. area, or at any of the retail branch Superintendent of Documents bookstores located in various metropolitan areas throughout the United States.

16. The statutes of the United States created the office of Public Printer to manage and supervise the Government Printing Office, which, with certain exceptions, is the authorized printer for the various branches of the Federal Government. 44 U.S.C. § 301. "Printing or binding may be done at the Government Printing Office only when authorized by law." § 501. The Public Printer is authorized to do printing for Congress, §§ 701–741, 901–910, as well as for the Executive and Judicial Branches of Government.

17. The Superintendent of Documents has charge of the distribution of all public documents except those printed for use of the executive departments,

"which shall be delivered to the departments," and for either House of Congress, "which shall be delivered to the Senate Service Department and House of Representatives Publications Distribution Service." § 1702. He is thus in charge of the public sale and distribution of documents. The Public Printer is instructed to "print additional copies of a Government publication, not confidential in character, required for sale to the public by the Superintendent of Documents," subject to regulation by the Joint Committee on Printing. § 1705.

18. The duties of the Public Printer and his appointee, the Superintendent of Documents, are to print, handle, distribute, and sell Government documents. The Government Printing Office acts as a service organization for the branches of the Government. What it prints is produced elsewhere and is printed and distributed at the direction of the Congress, the departments, the independent agencies and offices, or the Judicial Branch of the Government.

### Conclusions of Law

1. In Doe v. McMillan, 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973), the Supreme Court affirmed the lower Court's ruling dismissing this action as to the United States, the District of Columbia respondents and the Congressmen and their staff and aides named as defendants by the complaint. 412 U.S. 306, 310, n. 4, 324, n. 15, 93 S.Ct. 2018, 36 L.Ed.2d 912. Accordingly, this action was remanded, only as to the Public Printer, United States Government Printing Office, at the time of the events leading to this litigation, Adolphus N. Spence (listed in the complaint as Nicholas A. Spence), and the Superintendent of Documents at the time,

Robert E. Kling (listed in the complaint as Robert E. King).

2. The Supreme Court's remand left a single, narrow issue to be decided by the Court:

> [W]hether any part of the previous publication and public distribution by respondents other than the Members of Congress and Committee personnel went beyond the limits of the legislative immunity provided by the Speech or Debate Clause of the Constitution. (412 U.S. at 318)

The Court noted that it was unable to decide whether the Superintendent of Documents or the Public Printer "participate[d] in distribution of actionable material beyond the reasonable bounds of the legislative task" (412 U.S. at 315) because the Court was

> unaware, from this record, of the extent of the publication and distribution of the Report which has taken place to date. (412 U.S. at 324)

3. The record now before the Court, as summarized in the above Findings of Fact, establishes that all the actions of the two remaining defendants upon which plaintiffs seek to predicate this action did not exceed the legitimate legislative needs of Congress and thus their actions remained within the limits of immunity of the Speech or Debate Clause and the doctrine of official immunity.

4. As to defendant Spence, the action abated at his death. 12 D.C.Code § 101.

5. For the foregoing reasons defendants are entitled to judgment as a matter of law and therefore judgment should be entered in favor of defendants. An appropriate order has this date been entered.