# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Filed On: November 13, 2019

No. 19-5142

DONALD J. TRUMP, ET AL.,
APPELLANTS

v.

MAZARS USA, LLP AND COMMITTEE ON OVERSIGHT AND
REFORM OF THE U.S. HOUSE OF REPRESENTATIVES,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-01136)

---

On Petition for Rehearing En Banc

---

Before: GARLAND, *Chief Judge;* HENDERSON*,
ROGERS, TATEL, GRIFFITH, SRINIVASAN, MILLETT, PILLARD,
WILKINS, KATSAS*, and RAO*, *Circuit Judges.*

# **O R D E R**

Appellants' petition for rehearing en banc and the response thereto were circulated to the full court, and a vote was requested. Thereafter, a majority of the judges eligible to participate did not vote in favor of the petition. Upon consideration of the foregoing, it is

2

**ORDERED** that the petition be denied.

**Per Curiam**

**FOR THE COURT:**
Mark J. Langer, Clerk

**BY**: /s/
Michael C. McGrail
Deputy Clerk

\* Circuit Judges Henderson, Katsas, and Rao would grant the petition.

A statement by Circuit Judge Katsas, with whom Circuit Judge Henderson joins, dissenting from the denial of rehearing en banc, is attached.

A statement by Circuit Judge Rao, with whom Circuit Judge Henderson joins, dissenting from the denial of rehearing en banc, is attached.

KATSAS, *Circuit Judge*, with whom Circuit Judge HENDERSON joins, dissenting from the denial of rehearing en banc:

If the competing opinions here demonstrate anything, it is that this case presents exceptionally important questions regarding the separation of powers among Congress, the Executive Branch, and the Judiciary. For the second time in American history, an Article III court has undertaken to enforce a congressional subpoena for the records of a sitting President. The first time that was attempted, we took the case en banc, refused to enforce the subpoena, and stressed that the availability of impeachment foreclosed any conclusion that the records at issue were "demonstrably critical to the responsible fulfillment" of Congress's legislative prerogatives, even when Congress was investigating significant allegations of presidential misconduct. *Senate Select Comm. on Presidential Campaign Activities v. Nixon*, 498 F.2d 725, 731–33 (D.C. Cir. 1974) (en banc).

This case differs from *Senate Select Committee* in two respects, but neither diminishes its comparative importance. First, the subpoena at issue is directed not to the President directly, but to an accounting firm holding his personal financial records. Yet as Judge Rao has explained, that difference in form does not matter, because the subpoena in substance targets his records. *Trump v. Mazars USA, LLP*, No. 19-5142, slip op. at 9–11 (Rao, J., dissenting). Second, *Senate Select Committee* involved official communications over which the President had asserted executive privilege, whereas this case involves personal records and no privilege assertion. But that difference cuts in both directions. On the one hand, this case does not implicate the President's need to secure candid advice from close governmental advisors—the interest supporting a presidential communications privilege covering various official-capacity records. *See, e.g.*, *In re Sealed Case*, 121 F.3d 729, 742–44 (D.C. Cir. 1997). On the other hand, the

unavailability of that privilege creates an open season on the President's personal records. Under the panel's analysis, whenever Congress conceivably could pass legislation regarding the President, it also may compel the President to disclose personal records that might inform the legislation. And precisely because such demands would target his personal records, the President would have no privilege-based ground for making the records even "presumptively" unavailable. *See id.* at 744.

This threat to presidential autonomy and independence is far greater than that presented by compulsory process issued by prosecutors in criminal cases, as in *United States v. Nixon*, 418 U.S. 683 (1974), or even by private plaintiffs in civil cases, as in *Clinton v. Jones*, 520 U.S. 681 (1997). In those circumstances, governing rules provide for trimming any requests to avoid "embarrassment, oppression, or undue burden." Fed. R. Civ. P. 26(c)(1); *see also* Fed. R. Crim. P. 17(c)(2). Moreover, the rules are applied by judges instructed that avoiding "potential burdens on the President … should inform the conduct of the entire proceeding." *Clinton v. Jones*, 520 U.S. at 707. By contrast, under the panel's uncompromising extension of *McGrain v. Daugherty*, 273 U.S. 135 (1927), and its progeny to the President, the courts are powerless to take comparable considerations into account. *See Mazars USA, LLP*, slip op. at 23. Thus, the scope of required disclosure is determined not by neutral judges applying some form of rule-based interest balancing, but by the whim of Congress—the President's constitutional rival for political power—or even, as in this case, by one committee of one House of Congress. With regard to the threat to the Presidency, "this wolf comes as a wolf." *Morrison v. Olson*, 487 U.S. 654, 699 (1988) (Scalia, J., dissenting).

RAO, *Circuit Judge*, with whom Circuit Judge HENDERSON joins, dissenting from the denial of rehearing en banc:

I would grant rehearing en banc for the reasons expressed in my dissent to the panel opinion. *See Trump v. Mazars USA, LLP*, 940 F.3d 710, 748–84 (D.C. Cir. 2019) (Rao, J., dissenting). The House Committee on Oversight and Reform issued a subpoena to President Trump's accounting firm, Mazars USA, LLP, seeking evidence of alleged illegal conduct by the President. The Committee has relied throughout this litigation on Congress's legislative power as the authority for its subpoena. As I explained, the Committee exceeded its constitutional authority when it issued a legislative subpoena investigating whether the President broke the law. *See id.* at 767–75. Investigations of impeachable offenses simply are not, and never have been, within the legislative power because impeachment is a separate judicial power vested in Congress. The panel's analysis of these issues misapprehends the gravamen of the Committee's subpoena and glosses over the difficult questions it raises for the separation of powers.

While Congress's power to investigate as necessary and proper to the legislative power is broad, this subpoena is unprecedented. The Constitution and our historical practice draw a sharp line between the legislative and judicial powers of Congress. By upholding this subpoena, the panel opinion has shifted the balance of power between Congress and the President and allowed a congressional committee to circumvent the careful process of impeachment. The exceptionally important constitutional questions raised by this case justify further review by our court. *See generally Senate Select Comm. on Presidential Campaign Activities v. Nixon*, 498 F.2d 725 (D.C. Cir. 1974) (en banc) (considering en banc the only case concerning the propriety of a subpoena directed to a sitting President pursuant to the legislative power and concluding that the Senate committee responsible for

investigating the Watergate break-in lacked authority to subpoena President Nixon).

Separately, I note that the Committee is wrong to suggest that these questions are no longer of "practical consequence" because the House has subsequently authorized an impeachment inquiry. *See* Committee Br. 13 (citing H.R. Res. 660, 116th Cong. (Oct. 31, 2019)). From the outset of its investigation, the Committee has relied consistently and exclusively on the legislative power to justify this subpoena. *See* Memorandum from Chairman Elijah E. Cummings to Members of the Committee on Oversight and Reform 4 (Apr. 12, 2019) ("The Committee's interest in these matters informs its review of multiple laws and legislative proposals under our jurisdiction."). Throughout this litigation, the Committee has maintained that it is "not here relying on impeachment power," Oral Arg. at 1:34:19–22, and both the panel opinion and dissent agree that the Committee has never invoked the impeachment power as the basis for this subpoena. *See Mazars*, 940 F.3d at 726–27; *id.* at 767–71 (Rao, J., dissenting).

The Committee's suggestion that the current impeachment inquiry somehow alters this case depends on whether House Resolution 660 ratifies this subpoena. This Circuit has not determined whether a defective subpoena can be revived by after-the-fact approval. *See Dombrowski v. Burbank*, 358 F.2d 821, 825 (D.C. Cir. 1966) ("Whether this apparently approving action by the full Subcommittee would serve as a nunc pro tunc ratification and consequent validation of the subpoena for all purposes, we need not decide."), *rev'd in part on other grounds sub nom. Dombrowski v. Eastland*, 387 U.S. 82 (1967). But we need not confront that question here, because even assuming the subpoena could be issued under the impeachment power, the Committee has not reissued the subpoena pursuant to that power and House Resolution 660 does not purport to sweep

previously issued subpoenas into the ambit of the impeachment inquiry. Resolution 660 is explicitly forward looking: it authorizes the Oversight Committee, *inter alia*, to "continue [its] ongoing investigations as part of the existing House of Representatives" impeachment inquiry. H.R. Res. 660 § 1. In telling contrast, during the pendency of this litigation, the House enacted Resolution 507, which specifically claimed to ratify all "current and future investigations, as well as all subpoenas previously issued" relating to the President, pursuant to its "legislative authority under Article I of the Constitution." H.R. Res. 507, 116th Cong. (July 24, 2019). House Resolution 660 does not even purport to ratify previously issued subpoenas, so the authority for the subpoena in this case continues to depend exclusively on the legislative power.

Thus, the central question presented here remains whether the Committee can issue this subpoena investigating the alleged wrongdoing of the President pursuant to the legislative power. This question is one of exceptional importance, both for this case as well as for the recurring disputes between Congress and the Executive Branch.

I respectfully dissent from the denial of rehearing en banc.